IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| KONINKLIJKE KPN N.V., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:21-CV-00113-JRG |
| | § | |
| TELEFONAKTIEBOLAGET LM | § | **FILED UNDER SEAL** |
| ERICSSON, ERICSSON INC., | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Plaintiff Koninklijke KPN N.V.'s ("KPN") Motion for an Exceptional Case Finding and Fees under 35 U.S.C. § 285 and an Award of Expert Fees (the "Motion"). (Dkt. No. 276.) In the Motion, KPN moves the Court to find that this case is exceptional, award KPN its attorneys' fees, and award KPN its expert costs. Having considered the Motion, associated briefing, case record, and relevant authorities, the Court is of the opinion that the Motion should be **DENIED** for the reasons set forth below.

I.  **BACKGROUND**

KPN filed its original complaint against Defendants Telefonaktibolaget LM Ericsson and Ericsson Inc. (together, "Ericsson") on March 31, 2021 alleging infringement of U.S. Patent No. RE48,089 (the "'089 Patent"), U.S. Patent No. 8,881,235 (the "'235 Patent"), U.S. Patent No. 9,235,637 (the "'637 Patent"), 9,549,426 (the "'426 Patent"), and U.S Patent No. 9,667,669 (the "'669 Patent"). (Dkt. No. 2.) By the time of trial, KPN had narrowed its infringement allegations to claims 3, 4, 5, and 13 of the '089 Patent, claim 11 of the '235 Patent, and claim 26 of the '637 Patent. The case was tried to a jury, and the jury returned a verdict on August 26, 2022 that Ericsson infringed the asserted claims, that none of the asserted claims were invalid, that such

infringement was willful, and awarded $31,518,974.00 in damages to KPN. (Dkt. No. 246 ("Verdict").)

## II.     LEGAL STANDARD

In "exceptional cases," a district court "may award reasonable attorney fees to the prevailing party" pursuant to 35 U.S.C. § 285. An "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014); *see also Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014) (noting that "the word 'exceptional' in § 285 should be interpreted in accordance with its ordinary meaning" (citing *Octane Fitness*, 572 U.S. at 554)). Notably, it is not necessary that the litigation conduct at issue be independently sanctionable, e.g., because it involves bad faith or some other misconduct. *See Octane Fitness*, 572 U.S. at 554–55 (holding that "a district court may award fees in the rare case in which a party's unreasonable conduct— while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees").

The Supreme Court has been clear that district courts must determine whether any particular case is "exceptional" in a "case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554. Whether a case is "exceptional" or not "is a factual determination," *Forcillo v. Lemond Fitness, Inc.*, 168 F. App'x 429, 430 (Fed. Cir. 2006), and the Court must make its discretionary determination by a "preponderance of the evidence." *Octane Fitness*, 572 U.S. at 557 (rejecting the prior requirement that a patent litigant establish its entitlement to fees under § 285 by "clear and convincing" evidence). A district court's determination of whether a case is "exceptional" under § 285 is reviewed for an abuse of discretion. *See Highmark Inc.*, 572 U.S. at 563; *see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A.*, 858 F.3d

1371, 1374 (Fed. Cir. 2017) ("On appeal, all aspects of a district court's § 285 determination are reviewed for an abuse of discretion." (citation omitted)).

In assessing the "totality of the circumstances," courts may consider factors such as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 572 U.S. at 545 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.9 (1994) (addressing a similar fee-shifting provision in the Copyright Act)). While a party's conduct need not be independently sanctionable to warrant an award of fees under § 285, *id.* at 554–55, fee awards should not be used "as a penalty for failure to win a patent infringement suit." *See id.* at 548–49 (quotation omitted); *see also Checkpoint Sys., Inc.*, 858 F.3d at 1376.

Although an exceptional case finding is no longer constrained to "inequitable conduct before the PTO; litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement," *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002), "the absence of such conduct also weighs against an award" of fees under § 285. *AstraZeneca AB v. Aurobindo Pharma Ltd.*, 232 F. Supp. 3d 636, 649 (D. Del. 2017). Ultimately, "[t]he matter of attorney fees rests, of course, within the sound discretion of the trial judge, who is in the best position to determine whether, . . . [and to what extent], they should be awarded." *Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1458 (Fed. Cir. 1984).

### III. DISCUSSION

There is no dispute that KPN is the prevailing party in this case. (*See* Dkt. No. 262.) As such, the Court proceeds to consider "whether [this] case is 'exceptional' in the case-by-case exercise of [its] discretion, considering the totality of the circumstances." *Octane Fitness*, 572 U.S. at 554.

KPN moves for its fees citing four arguments. First, KPN argues that Ericsson prejudiced KPN by asserting, and then strategically dropping, its FRAND defense halfway through trial. Second, KPN contends that Ericsson misled KPN and the Court about the existence of highly relevant evidence regarding the Minimization of Drive Time ("MDT") feature before springing it on KPN at trial. Third, KPN claims that Ericsson violated the Court's orders, committed other trial misconduct, and increased KPN's costs. Fourth, KPN argues that Ericsson's willful infringement further supports this is an exceptional case. The Court addresses each argument in turn and ultimately finds that this case is not exceptional, and fees are not warranted.

### A.      Ericsson's Dropped FRAND Defense

KPN argues that Ericsson pursued a "sham" FRAND defense throughout this case only to withdraw it on the third day of trial after KPN had rested its case in chief. (Dkt. No. 276 at 1.) KPN asserts that the FRAND defense was designed to distract KPN and force it to spend time and money developing its case addressing a "phantom issue." (*Id.* at 5.) KPN also alleges that Ericsson knew it would never assert FRAND as a defense at trial, but nevertheless used it as a hook to introduce otherwise irrelevant evidence into the case, and then withdrew it after reaping the benefit of the defense. (*Id.* at 5–6.)

Specifically, KPN notes that from the beginning of the case, Ericsson represented in its pleadings that "KPN's claims are barred, or its relief limited, by its violation of its obligation to license the Asserted Patents on fair, reasonable, and non-discriminatory ('FRAND') terms and conditions." (*Id.* at 2 (citing Ericsson's Answer).) The parties conducted discovery on and litigated the FRAND issue up through the pretrial conference, where the Court denied KPN's Partial Motion for Summary Judgment and/or to Strike Expert Opinions Regarding Ericsson's FRAND Defense. (*See* Dkt. Nos. 226 and 229 (the Court denying Dkt. No. 113).) Ericsson listed in several versions of the Joint Pretrial Orders the "contested issue" of "[w]hether KPN's claims

are barred, or its relief limited, by its violation of its obligation to license the patents-in-suit on FRAND terms and conditions." (Dkt. No. 276 at 4.) Ericsson designated deposition testimony about FRAND issues for several KPN witnesses and put FRAND-related documents on its exhibit list. (*Id.*)

Relying on these representations, KPN argues that it expended time at trial rebutting Ericsson's position. (*Id.* (citing KPN's opening statement, two instances of questioning its witnesses about FRAND issues, and one instance questioning an Ericsson witness.) KPN argues it also spent time preparing to cross Ericsson's witnesses on FRAND and prepared its witnesses to be crossed on FRAND, which proved to be unnecessary. (*Id.* at 4–5.)

KPN references the Court's prior ruling sanctioning Ericsson for its withdrawal of the FRAND defense. (*Id.* at 6–7.) KPN characterizes Ericsson's explanation of dropping the FRAND defense as an admission that Ericsson never planned to present a FRAND defense at trial. (*Id.* at 5.) KPN also alleges that the Court's remedy (ordering Ericsson to reimburse KPN for its expended time, deducting 30 minutes from Ericsson's trial time, and instructing the jury on Ericsson's withdrawal of the FRAND defense) is insufficient to cure the prejudice suffered by KPN because KPN also wasted time and resources before trial conducting discovery on FRAND, briefing and arguing a summary judgment motion, objecting to exhibits, and preparing its witnesses on FRAND. (*Id.* at 7.)

KPN analogizes Ericsson's conduct to that which the Court found warranted an exceptional case finding in *Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 421 F. Supp. 3d 410 (E.D. Tex. 2019). (Dkt. No. 276 at 8.) KPN argues that Ericsson raised a defense to reap the benefits of using FRAND evidence and crossing KPN witnesses on FRAND-related topics only to later drop it, similar to the conduct the Court found inequitable and unreasonable in *Optis*. (*Id.*)

5

In response, Ericsson argues that the Court already addressed the FRAND issue by ordering sanctions, and that KPN's Motion amounts to an attempted second recovery. (Dkt. No. 289 at 3.) Ericsson argues that conduct previously addressed should not support a fee award under § 285. (*Id.* at 4.)

Ericsson argues that KPN misquotes and misrepresents the record to support its assertion that Ericsson's FRAND defense was a sham. (*Id.* at 4.) Ericsson contends it did not admit that it "never planned to present a FRAND defense to the jury," as KPN alleged. Instead, Ericsson believed it could rely on KPN's statements made in negotiations indicating that the patents were essential, and that it remained an open question as to which party bore the burden of proof on FRAND. (*Id.* at 5.) Ericsson explains that it (and KPN) had always known that Ericsson submitted its FRAND defense for the purposes of limiting damages *in the event* the jury found infringement. (*Id.* at 6 (citing KPN's opening statement characterizing Ericsson's FRAND defense as a fall-back position).)

Counter to KPN's argument that Ericsson used its FRAND defense to reap the benefit, only to drop it, Ericsson states that it did not cross examine any KPN witnesses or introduce any FRAND evidence before withdrawing the defense. (*Id.*) Ericsson argues that it was KPN who brought up FRAND in each of the four instances it was mentioned during trial, and in each instance KPN mentioned it for its own benefit, for example to make KPN's damages model appear reasonable. (*Id.* at 6–7.)

KPN distinguishes *Optis*, in which the Court bifurcated patent infringement claims from FRAND declaratory judgment claims, Huawei argued FRAND as a limitation on damages in the patent infringement phase of the trial, and then Huawei dropped its FRAND defense after the jury retired to deliberate. (*Id.* at 7–8.) In that case, the Court found that Huawei had obtained the full

6

benefit of FRAND by arguing it as a limitation on damages in front of the jury while then depriving Optis of its ability to have the Court consider the issue in the context of Optis's declaratory judgment claims, which the Court found was rank gamesmanship. Ericsson argues that contrary to the scenario in *Optis*, Ericsson never made the argument of FRAND as a limitation on damages to the jury before withdrawing the defense.

Ericsson also argues that KPN overstates the effect of Ericsson's withdrawal of its FRAND defense because even if Ericsson had never pled a FRAND defense, FRAND-related issues would still have arisen. (*Id.* at 8.) Ericsson asserts that KPN injected FRAND-based issues by claiming unreliability of Ericsson's damages expert's analysis for relying on comparable licenses with depressed royalties because they were FRAND-encumbered, and KPN used Ericsson's own FRAND rates to make KPN's rates seem reasonable in comparison. Furthermore, Ericsson notes that whatever time KPN spent rebutting a defense that Ericsson did not pursue had no effect on KPN's time limits at trial because KPN still had 51 minutes remaining when it rested its case.

Finally, Ericsson argues that KPN employed the same late-withdrawal strategy it criticizes Ericsson for with respect to its claims for indirect infringement. (*Id.* at 9.) Ericsson argues that KPN's hands are also unclean and that this should factor into the totality of the circumstances in determining if the case is exceptional.

### B. Mr. Diamond's Testimony

Next, KPN argues the significance of certain testimony of Ericsson's witness, Mr. Jeffrey Diamond, regarding the alleged non-use of the Minimization of Drive Testing ("MDT") feature by Ericsson's customers and Ericsson's reliance on that testimony during Ericsson's closing arguments. (Dkt. No. 276 at 8–12.) KPN argues that Ericsson violated a stipulation the parties entered in which Ericsson stated:

7

> Ericsson represents that, following a reasonably diligent investigation, it has produced all Network Audit Reports and other documents if any (including results from any queryable databases) in its possession custody or control that would show enablement or use of the MDT feature.

(Dkt. No. 105 at 2.) During Ericsson's case in chief, Ericsson called Mr. Diamond, an Ericsson sales executive working with T-Mobile, and elicited testimony that T-Mobile did not use MDT on its network. KPN asserts that Ericsson's questioning regarding a "parking lot" where Ericsson and T-Mobile kept unused features directly violates this stipulation because it is a database. (Dkt. No. 276 at 1, 9–12 and Dkt. No. 295 at 4–5.)

Ericsson responds that KPN incorrectly refers to the "parking lot" as a "database." (Dkt. No. 289 at 12–13.) Ericsson argues that Mr. Diamond's testimony makes clear the "parking lot" is a colloquialism for the features available from Ericsson that T-Mobile does not use or plan to use. (*Id.* at 12.) Ericsson's position is that Mr. Diamond never mentioned a "database." Instead, he testified about T-Mobile's non-use of MDT based on conversations with his team and T-Mobile, which did not fall within the parties' stipulation or the Court's ruling on KPN's objection at trial.

### C. Violation of the Court's Orders and other Misconduct

KPN argues that Ericsson engaged in other acts of misconduct at trial that further support an exceptional case finding. (Dkt. No. 276 at 12–15.) Specifically, KPN identifies Ericsson's multiple disruptions amid KPN's closing arguments, Ericsson's raising of a "practicing the prior art defense" contrary to the parties agreed motion *in limine*, and burdening KPN with unnecessary motion practice relating to '426 Patent and Ericsson's marking defense.

Ericsson responds that KPN's criticisms do not warrant an exceptional case filing. Ericsson argues that it consented to KPN's dismissal of the '426 Patent infringement claims as soon as KPN covenanted not to sue Ericsson. (Dkt. No. 289 at 13.) Ericsson also argues that its withdrawal of its opposition to two KPN summary judgment motions is the type of narrowing of

issues that should be encouraged, not punished. (*Id.* at 13–14.) Ericsson further argues that the *Tayloe* prior art reference became more relevant in light of Dr. Mangione-Smith's allegedly new theories regarding the '089 Patent, and that KPN did not object at the time it believed Ericsson allegedly violated any motion *in limine*. (*Id.* at 14.) Finally, Ericsson reiterated that it apologizes to KPN and the Court for its interruptions of KPN's closing arguments, which it claims were inadvertent. (*Id.*)

### D. Willfulness

KPN argues that a finding of willfulness is further evidence that a case is exceptional. (Dkt. No. 276 at 15.) KPN argues that the jury's finding that Ericsson's infringement was willful, together with the panoply of litigation misconduct committed by Ericsson, supports an exceptional case finding.

Ericsson responds that a finding of willful infringement does not necessarily make a case exception, particularly where the parties engaged in pre-suit negotiations involving claim charts. (Dkt. No. 289 at 15.) Ericsson also notes that the Court decided not to enhance damages in this case, which is a further reason not to find the case exceptional.

## IV. ANALYSIS

The Court finds that this case is not exceptional based on the totality of the circumstances.

Concerning Ericsson's dropped FRAND defense, as the Court found previously, the impropriety of Ericsson's conduct was more so in disclosing to KPN that it was dropping its FRAND defense mid-trial than about Ericsson's substantive legal position regarding FRAND. (Dkt. No. 257 at 261:24–262:13.) The Court already addressed that misconduct by crafting an appropriate sanction to remedy the harm done to KPN. (Dkt. No. 257 at 335:6–336:12.) The Court is further mindful that an award of attorneys' fees under § 285 generally should be limited to compensating "for the extra legal effort to counteract the misconduct." *Precision Links Inc. v.*

*USA Prods. Group, Inc.*, 527 Fed. App'x 852, 858 (Fed. Cir. 2013).  The Court finds that any extra legal effort that would have been necessary to counteract the claimed harm to KPN resulting from Ericsson's misconduct (namely, needlessly expending trial time and making promises to the jury about issues that would never come up) has already been redressed by the Court's prior sanction awarding KPN reimbursement for its time spent, and by issuing an instruction to the jury.  *See, e.g., VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 848 (E.D. Tex. 2013); *Johnstech Int'l Corp. v. JF Microtechnology SDN BHD*, 2018 WL 3730404, at *4 (N.D. Cal. Aug. 6, 2018).[1]

KPN's other complaints, including that Ericsson's representations "shaped KPN's preparations in this case from the day KPN received Ericsson's Answer" (Dkt. No. 276 at 4), do not rise to the level of misconduct warranting an award of attorneys' fees.  Rather, they reflect the fog of war and uncertainty inherent in adversarial proceedings in which parties are expected to develop their case through robust discovery and narrow their ultimate issues for trial.  Furthermore, on this particular issue, the Court previously found that sworn evidence, whether through Plaintiff's or Defendant's witnesses, could support Ericsson's burden to prove its FRAND defense. (Dkt. No. 226 at 78:2–5.)   KPN's argument regarding the burden of proof misses the point. Ericsson *could* have satisfied its burden by relying on KPN's prior representations of essentiality and through either party's witnesses at trial.  Although the ultimate burden to prove the FRAND defense rested with Ericsson, the Court need not reach the issue of whether Ericsson could have met its burden without itself asserting that the patents were essential, and necessarily infringed, and instead relying only on KPN's representations.  Ericsson's fault here was in unreasonably waiting until halfway through trial to jettison its FRAND defense for strategic reasons by way of

---

[1] Aside from directly redressing the harm to KPN, the Court's sanction also penalized Ericsson by subtracting trial time.

redlines in the parties' proposed jury instructions. However, Ericsson has already paid the price for that conduct.

The Court also takes note that KPN has engaged in conduct similar to that it complains of against Ericsson concerning late withdrawal of claims. In three separate versions of the joint pretrial order, including one submitted just days before trial, KPN represented to the Court that it was asserting claims of indirect infringement under 35 U.S.C. § 271(b). (*See* Dkt. Nos. 221, 228, 235.) KPN continued to assert indirect infringement even in light of Ericsson's acknowledgement that KPN had "agreed to drop all user terminal claims from all other asserted patents" aside from the '235 Patent. (*See* Dkt. No. 114 at 1.) On August 17, 2022, KPN informed Ericsson of its intent to drop claim 5 of the '235 Patent and stated it would make "edits to the jury instructions . . . in light of the current claims." (Dkt. No. 289-5.) Then, on August 20, 2022, the Saturday before jury selection was to begin on Monday, August 22, 2022, KPN provided Ericsson with a redline version of proposed final jury instructions that had completely redlined through the material on indirect infringement. (Dkt. No. 289-4 at 12–13 and 43–45.) KPN did not confirm when asked if it was dropping its claims of indirect infringement, and it was not until KPN's opening statement that KPN conveyed it was not asserting indirect infringement. (*See* Dkt. No. 289 at 11.) This conduct by KPN in dropping its claims at or on the cusp of trial also factors into the Court's analysis of the totality of the circumstances.

Further, while this case may bear some resemblance to *Optis* in that Ericsson apparently sought to extract some benefit from its FRAND defense only to later drop it to the detriment of KPN, the Court does not find that Ericsson's conduct rises to the level of Huawei's in that case. *See Optis Wireless Tech., LLC v. Huawei Device USA, Inc.*, 421 F. Supp. 3d 410 (E.D. Tex. 2019). Ericsson argues that *Optis* is inapposite because Huawei argued FRAND as a limitation on

damages throughout the jury trial, but here, "Ericsson did not argue FRAND before the jury and never got any benefit from it . . . ." (Dkt. No. 289 at 7–8.)  The Court does not find this persuasive because it need not be Ericsson that makes a presentation to the jury regarding FRAND as a limitation on damages for Ericsson to reap the benefit of the defense.  KPN explained how Ericsson may have benefited from leveraging the FRAND issue.  (*See* Dkt. No. 276 at 7–8 and Dkt. No. 295 at 1–2.)  However, the situation here is far different from *Optis*, where Huawei advanced its position throughout trial and then, only after closing arguments and during jury deliberations, as the Court was about to conduct the bench trial as to whether Optis's portfolio-wide licensing offers complied with FRAND, did Huawei announce that it was dropping its FRAND defense to thereby deprive Optis the ability to have the Court consider its declaratory judgment claims.  The Court does not find that Ericsson reaped the "full benefits" of FRAND without actually pursuing it, as in *Optis*.

Concerning Mr. Diamond's testimony, the Court previously recognized Ericsson's attempt to characterize Mr. Diamond's checking of the "parking lot" as something different from checking a "database" and determined that to allow Ericsson to do so would "vitiate[] the meaning of the stipulation" between the parties. (Dkt. No. 257 at 124:13–127:25.)  Therefore, the Court granted KPN's request to strike Mr. Diamond's testimony "to the extent [he] testified about checking a database."  (*Id.* at 127:20–23.)  However, the Court also recognized that aside from the alleged "checking" or "reviewing" of a "database," KPN's challenges to Mr. Diamond's testimony could be adequately raised on cross-examination.  (*Id.* at 126:19–21.)  Indeed, KPN did probe the issue of T-Mobile and Ericsson's use or non-use of MDT on cross-examination.  (*See id.* at 142:6–155:16.)  In its closing argument, Ericsson referenced Mr. Diamond's testimony that he "said MDT in the T-Mobile system [is] in the parking lot;" "[i]t's not being used;" and "[i]t's just stuck in the

parking lot." (Dkt. No. 259 at 58:20–25.)  Ericsson did not, however, represent that Mr. Diamond checked a database to ascertain whether MDT was or was not in use by T-Mobile.

The Court is not persuaded that Ericsson "misled KPN and the Court" about the MDT feature and the "parking lot," as KPN contends.  The parties' stipulation states that Ericsson had produced "all Network Audit Reports and other documents if any (including results from any queryable databases) in its possession custody or control that would show enablement or use of the MDT feature." (Dkt. No. 105 at 2.)  Mr. Diamond testified that the "parking lot" refers to a collection of features available from Ericsson that T-Mobile does not use or plan to use, and that it is based on discussions with T-Mobile.  (Dkt. No. 257 at 121:16–122:2.)  Ericsson represented that there is "no document to be had" associated with the parking lot.  (*Id.* at 124:24–25.)  The Court addressed the apparent confusion concerning whether the "parking lot" was a "database" by issuing a ruling striking Mr. Diamond's testimony "to the extent [he] testified about checking a database," but otherwise left Mr. Diamond's testimony intact.  The Court does not find Ericsson's conduct with respect to Mr. Diamond's testimony provides a basis for finding this case exceptional.

Next, regarding Ericsson's alleged violation of the Court's orders and other trial misconduct, though disappointing, the Court does not find the few other instances identified by KPN to rise to the level of misconduct warranting an exceptional case finding and fee award.  The Court reprimanded Ericsson and its counsel for its apparent disregard of the Court's directive to prevent interruptions and distractions during closing arguments.  The Court does not expect such occurrences going forward.  As for the '426 Patent, in light of Ericsson's live and pending (at the time) counterclaim for non-infringement, the Court is not persuaded that Ericsson's course of conduct was unreasonable.  As for the alleged violation of the parties' agreed motion *in limine*, the

13

Court declines KPN's invitation to scour and pick apart the trial record to find fault with Ericsson's conduct when KPN did not object at the time to the specific conduct it now complains of.

Finally, while the Court is mindful of the jury's finding of willfulness, the Court does not find that Ericsson's willfulness in this case goes so far as to make Ericsson's litigating position so meritless as to stand out from the norm. Indeed, the Court decided not to enhance damages in this case, noting that enhancement is generally reserved for egregious cases of culpable behavior. (Dkt. No. 262 at 2.

Taking all relevant factors into account, the Court is not persuaded that this is an exceptional case. Exceptionality is a high bar, *Nantkwest, Inc. v. Iancu*, 898 F.3d 1177, 1182 (Fed. Cir. 2018), and the Court cannot say that a few moments of low credibility were enough to make it exceptional for attorneys' fees purposes. Most, if not all, of the harm that KPN complains of with respect to Ericsson's late-withdrawn FRAND defense was already redressed by the Court's prior sanction. Moreover, KPN prevailed in this case and was awarded the full amount of damages it requested from the jury. Further, while Ericsson walks a fine line between zealous advocacy and incredulity with respect to Mr. Diamond's "parking lot" testimony, such did not permeate Ericsson's trial presentation as a whole. Rather, Ericsson moved on entirely from the "parking lot" notion in Mr. Diamond's testimony after the Court instructed, and mentioned it only briefly in its closing argument. There is no evidence that Ericsson built its case based on pervasive fraud or lies, which might have supported an exceptional case finding.

Ultimately, in light of the totality of circumstances, which this Court observed first-hand, the Court concludes that this case is not exceptional under § 285, and KPN is not entitled to its attorneys' fees. It follows, therefore, that KPN's request for expert fees fails as well. *See MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012).

## V.   CONCLUSION

For the reasons above, the Motion (Dkt. No. 276) is **DENIED**. The parties shall also jointly submit a redacted public version hereof to the Clerk for filing within 5 days hereof.

**So ORDERED and SIGNED this 15th day of June, 2023.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE